**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA TALLAHASSEE DIVISION**

**CALEB JOHNSON,**

**Plaintiff,**

**vs.** **CASE NO. 4:22-CV-00226-AW-MAF**

**SEC'Y, DEP'T OF CORR.,**

**Defendant.**

**______________________/**

# REPORT AND RECOMMENDATION

Petitioner, Caleb Johnson, a convicted state felon, filed a habeas corpus petition, pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction and sentence for first degree felony murder following a jury trial. The court reviewed the petition (ECF No. 1); the State's answer (ECF No. 11) with supporting exhibits consisting of all pertinent portions of the criminal case, subsequent appellate filings, and decisions; and Johnson's Reply (ECF No. 19), which repeats his claims. After careful consideration, Johnson's habeas petition should be **DENIED**.

## I. Grounds for Relief

Johnson presented the following grounds for relief:

1. Counsel failed to retain a forensic pathologist as an expert witness for trial. ECF No. 1, pp. 5-17.

2. Counsel erroneously advised Johnson not to testify. Id., pp. 17-24.

3. Counsel failed to request the pre-2005 standard jury instruction on justifiable use of deadly force. Id., pp. 24-34.

4. Counsel failed to object to improper jury instructions. Id., pp. 34-45

5. Counsel did not argue *corpus delecti*. Id., pp. 45-48.

6. Counsel failed to object to the prosecutor's improper closing argument. Id., pp. 48-51.

7. During closing argument, counsel made improper comments by commenting on Johnson's right to remain silent. Id., pp. 51-53.

8. Counsel failed to object to Dr. Minyard's use of the term "victim." Id., pp. 53-56.

9. Counsel failed to request that the jury see the portion of the police interview when Johnson cried after learning the victim died. Id., pp. 56-58.

10. Counsel failed to properly display the photographs of Johnson's injuries. Id., pp. 58-60.

11. Counsel failed to present witnesses Jana Brewer and Michelle Andrews at the hearing on his motion for new trial. Id., pp. 60-63.

12. The totality of counsel's errors denied Johnson a fair trial. Id., pp. 63-64.

13. The post-conviction court denied Johnson an evidentiary hearing on his Rule 3.850 motion. Id., pp. 14-17, 20-21, 24, 34, 44, 48, 51, 53, 56, 58, 60, and 63.

## II. Background

### A. Evidence at Trial

Johnson and Tyler McCastle cooked cocaine in Johnson's apartment on the evening of August 23, 2014, and got into a knife fight. Tr. 242-64, 266-71, 296-97, 319, 368, 379, 430-31, 469. McCastle suffered multiple stab wounds to his back, abdomen, and arm, and superficial injuries to his head, torso, and hand. Tr. 205. Johnson had a laceration to his hand. Tr. 289. McCastle escaped and called 911: "Bainbridge. I just been robbed. I'm about to die. Please come. Stabbed bad." Tr. 226-28, 232-33. McCastle went to a nearby home and banged on the door screaming for help because he was robbed, stabbed, could not breathe, and was dying. Tr. 151-53, 160-62, 165. Residents called 911 for assistance. Tr. 151, 161, 165, 223. Responding officers found McCastle on the porch, administered CPR, and took him to a hospital where he later died. Tr. 168-70, 182.

In contrast, Johnson wiped certain areas of his apartment, drove his car about 35 miles out of state, and, on the way, disposed of his bloody t-shirt. Tr. 307-40, 407, 435. Johnson never sought police assistance or medical attention. Tr. 350, 353, 393, 400-02. Just three hours after McCastle died, Johnson checked into a hotel and stayed for two days with drugs he stole from McCastle. Tr. 272-87, 347-50, 354, 386, 406. Johnson

admitted to police he stabbed McCastle in self-defense. Tr. 307-409, 413-36. In jail, Johnson confessed to an inmate, Stephen Ard, that he intended to rob McCastle after they cooked crack cocaine. Tr. 469-72, 479-80.

B. Procedural History

A jury found Johnson guilty of first-degree felony murder, in violation of Fla. Stat. §§ 782.04 and 775.087;[1] he was sentenced to life in prison. ECF No. 11-3, pp. 70, 72. Johnson appealed. Id., pp. 24, 74, 108. The First District Court of Appeal (First DCA) affirmed on May 22, 2017, *per curiam*, without written opinion. Johnson v. State, 226 So. 3d 818 (Fla. 1st DCA 2017). On September 14, 2018, Johnson sought habeas relief pursuant to Fla. R. Crim. P. 3.850. ECF No. 11-16, pp. 10, 12-33. The post-conviction court denied relief without a hearing; and on March 31, 2022, the First DCA affirmed, *per curiam*, without written opinion. Johnson v. State, 335 So. 3d 1190 (Fla. 1st DCA, 2022). The First DCA issued its mandate June 20, 2022. ECF No. 11-26. This § 2255 petition was timely filed on June 21, 2022. ECF No. 1.

## III. Applicable Law

A. Standard of Review

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and

[1] State v. Johnson, Escambia County Case No. 2014-CF-3688

Effective Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for persons in state custody. Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) Resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) Resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Cullen v. Pinholster, 563 U.S. 170, 180-83 (2011); Gill v. Mecusker, 633 F.3d 1272, 1287-88 (11th Cir. 2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" Cullen, 563 U.S. at 181 (quoting Harrington v. Richter, 562 U.S. 86, 102 (2011), and Woodford v. Visciotti, 537 U.S. 19, 24 (2002)). This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits." Id.

B. Ineffective Assistance of Trial Counsel

To prevail on a claim of ineffective assistance of counsel, a petitioner

must demonstrate that (1) counsel's performance was deficient and (2) a reasonable probability that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687, 694 (1984); Harrington, 562 U.S. at 104. If the petitioner cannot meet one of Strickland's prongs, the court does not need to address the other prong. See, e.g., Dingle v. Secy, Fla. Dep't of Corr., 480 F.3d 1092, 1100 (11th Cir. 2007) (relying on Strickland, 466 U.S. at 697).

To show counsel's performance was unreasonable, a petitioner must establish that "no competent counsel would have taken the action that his counsel did take." Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler v. United States, 218 F.3d 1305, 1315 (11th Cir. 2000). Regarding the second prong, a petitioner must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. Strickland, 466 U.S. at 694. For the court to focus merely on "outcome determination," however, is insufficient: "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010). A petitioner must establish "that counsel's errors were

so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).

The presumption of counsel's adequate performance wields "particular force where" the ineffective-assistance claim is based "solely on the trial record, creating a situation in which a court 'may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive.'" Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (quoting Massaro v. United States, 538 U.S. 500, 505 (2003)). Importantly, the deference afforded to trial counsel's performance is doubly so when a petitioner raises an ineffective assistance claim under § 2254(d). Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004) ("In addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference – this one to a state court's decision – when we are considering whether to grant federal habeas relief from a state court's decision."). It is well settled that habeas petitioners bear the burden of proof. Blankenship v. Hall, 542 F.3d 1253, 1270 (11th Cir. 2008). By requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." Occhicone v. Crosby, 455 F.3d 1306, 1310 (11th Cir. 2006).

## IV. Discussion

A. Ground 1 - Counsel was not ineffective for not retaining a forensic pathologist to testify at trial.

Johnson claims counsel was ineffective for failing to retain a forensic pathologist to testify. ECF No. 1, pp. 5-17. Johnson's "sole defense" "was self-defense"; McCastle attacked Johnson causing a substantial wound to Johnson's hand. Id., p. 6. Johnson argues a forensic pathologist would have testified Johnson suffered defensive wounds and could refute the medical examiner's testimony about McCastle's wounds; and the jury would have acquitted him. Id.

The State correctly asserts counsel's decision was reasonable and deserves deference. ECF No. 11, p. 20. There was no dispute Johnson suffered an injury; and it was reasonable to conclude Johnson "suffered a defensive wound even if he were the initial attacker." Id., p. 21. A forensic pathologist was not necessary because other evidence at trial showed Johnson suffered defensive wounds. However, an expert would not be able to determine who was the initial aggressor. Id., p. 22.

Which witnesses an attorney should present to testify, if any, is a strategic decision that should seldom be second guessed. Conklin v. Schofield, 366 F.3d 1191, 1204 (11th Cir. 2004). Tactical decisions within the range of reasonable professional competence are not subject to

collateral attack unless the decision was so "patently unreasonable that no competent attorney would have chosen it." Dingle, 480 F.3d at 1099 (citations omitted). Complaints of uncalled witnesses are not favored in federal habeas corpus review because allegations of what a witness would have stated are largely speculative. Sullivan v. DeLoach, 459 F.3d 1097, 1109 (11th Cir. 2006); Woodfox v. Cain, 609 F.3d 774, 808 (5th Cir. 2010). To prevail, a petitioner must demonstrate "the witness was available to testify and would have done so." Woodfox, 609 F.3d at 808.

Johnson does not name any expert who was available to testify; and his assertions that one would have testified McCastle was the aggressor are pure speculation.[2] See Woodfox, 609 F.3d at 808. That alone warrants the denial of his claim. In any event, even if an expert was available, testimony about Johnson's wounds would have been duplicative. Dr. Minyard testified[3] McCastle suffered: "multiple stab wounds . . . [to] the upper back . . . midback . . . abdomen . . . arm . . . and . . . some superficial injuries, and those injuries included puncture marks and incised wounds . . . made with a sharp weapon . . . on the head[,] . . . the torso[,] and . . . extremities – especially on the hand." Tr. 205. The photographs were

[2] No one is named in the petition or Reply. See ECF No. 19, pp. 1-2.

[3] See Minyard's testimony at Tr. 202-18. This Report uses "Tr. ___" as the citation to the trial transcript. The trial transcripts are docketed as ECF Nos. 11-5 through 11-7.

Page 10 of 49

published to the jury with an overhead projector. Tr. 206. Dr. Minyard opined the fatal blow was a "stab wound of the upper back . . . four and a half inches deep," "through [McCastle's] ribcage," which "hit his right lung." Tr. 208. The wounds on McCastle's fingers were "consistent [with] a victim . . . trying to grab the blade of a knife." Tr. 214. Dr. Minyard could not determine who the aggressor was, what happened in the struggle, or whether the finger wounds were caused by fighting back or by handling the blade. Tr. 216-17.

Detective Greene testified to being present when Johnson's injuries were photographed and observed "a laceration, incision, or a cut" to "the heel" of Johnson's left hand. Tr. 289. Defense counsel published the photos to the jury. Tr. 289-90. Given the evidence presented at trial, counsel acted reasonably in not securing a forensic pathologist.

Johnson presented this claim in his Rule 3.850 motion, which was adjudicated on the merits within the meaning of 28 U.S.C. § 2254(d). ECF No. 11-16, pp. 215-17. The post-conviction court, in part, found: (1) Greene testified he observed the cuts on Johnson's left hand when the photographs were taken; (2) photos of Johnson's cut were introduced at trial; (3) Johnson told law enforcement McCastle came at him with a knife and Johnson cut his arm, back, and hand during the fight; (4) analyst

Leann Hodge testified Johnson's blood was on McCastle's shirt and the knife blade; (5) McCastle's blood matched the grip of the knife found under a couch; and (6) both McCastle's and Johnson's blood were on the blade. Id., pp. 215-16. In addition, the post-conviction court found Johnson's expert witness claim was insufficiently pled. Id., p. 217.

In its review of Johnson's motion, the state court found "there was no reasonable probability of a different outcome" if an expert testified about Johnson's defensive wounds because this was undisputed at trial. Id. The appellate court affirmed. This court agrees. Counsel's strategy was reasonable and deserves double deference. The decisions of the state and appellate courts were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations in light of the evidence presented. 28 U.S.C. § 2254(d). This claim should be **DENIED**.

B. Ground 2 – Counsel was not ineffective for advising Johnson not to testify.

Johnson claims he was prejudiced by counsel's advice to not testify at trial. ECF No. 1, pp. 17-24. Johnson would have testified he was innocent, did not make incriminating admissions to a fellow inmate, and cried when police informed him McCastle died. Id., pp. 17-24. Johnson admits that "the state postconviction court establish[ed] that [he] freely and

Page 12 of 49

voluntarily chose to refrain from testifying," but argues the colloquy did not answer the question of whether counsel's advice was deficient. Id., p. 19.

The State contends Johnson is not entitled to relief because the state court rulings were reasonable and not contrary to federal law. ECF No. 11, p. 27. The State argues the post-conviction court properly denied the claim because Johnson (1) "failed to allege the reason counsel gave him for not testifying"; (2) knowingly and voluntarily waived the right to testify; (3) was present at trial to hear testimony about his jailhouse admissions; and (4) his reaction was played at trial, but he still did not testify. Id., pp. 27-33.

"[A] criminal defendant has a constitutional right to testify in his own behalf at his trial." United States v. Teague, 953 F.2d 1525, 1530 (11th Cir. 1992) (*en banc)*. "This right is personal to the defendant and cannot be waived either by the trial court or by defense counsel." Id. at 1532. "The decision whether a criminal defendant should take the witness stand in his own trial unquestionably has tremendous strategic importance." Id. "Defense counsel bears the primary responsibility for advising the defendant of his right to testify or not to testify, the strategic implications of each choice, and that it is ultimately for the defendant himself to decide." Id. at 1533; see Lambrix v. Singletary, 72 F.3d 1500, 1508 (11th Cir. 1996) (Without evidence of continued coercion, the court cannot assume one's

"apparent acquiescence to a trial strategy in which he did not testify was anything but voluntary.").

When a defendant maintains "he was the only person" able "to refute the prosecution's case," it may be a good reason to testify, but "it certainly isn't enough to establish his decision not to testify was unknowingly and unintelligently made." United States v. Waters, 937 F.3d 1344, 1358 (11th Cir. 2019). "[A]bsent evidence to the contrary, district courts should presume that the defendant, even a *pro se* defendant, has made a knowing and intelligent decision about whether to testify."). United States v. Hung Thien Ly, 646 F.3d 1307, 1317 (2011).

First, Johnson's statements about what his testimony would have been are self-serving; he provides no facts to show counsel's advice was erroneous. In his Reply, Johnson concedes he freely and voluntarily waived his right but insists no reasonable attorney would have advised him not to testify. ECF No. 19, p. 3. In reviewing Johnson's Rule 3.850 motion, the post-conviction court found he never presented *the basis* for counsel's advice and did not allege continued coercion, "[t]herefore, [the] claim is insufficient to show counsel's advice is erroneous." ECF No. 11-16, p. 217.

Johnson's reliance on Hodges v. State is misplaced because "Hodges had been informed that the jury could be made aware of his prior

felony conviction, but not the specifics of the conviction, if he testified." Hodges, 260 So. 3d 458, 459 (Fla. 5th DCA 2018). Hodges makes clear that a "trial court's summary denial of claims raised in a 3.850 motion . . . must be either facially invalid or conclusively refuted by the record." Id. The post-conviction court found the claim, without alleging a reason for counsel's advice, was insufficient on its face. ECF No. 11-16, p. 217. Johnson's reliance on Everhart v. State, 773 So. 2d 78, 79 (Fla. 2d DCA 2000) is unavailing. Everhart's "counsel interfered . . . by erroneously informing him that if he testified, the jury would automatically be told of the specific nature of his prior convictions." Id., 773 So. 2d at 79. Neither case proposes that counsel should not advise a defendant to refrain from testifying simply because there are good reasons to testify. Yet, that is the crux of Johnson's argument. There are many factors to consider, aside from a lack of criminal history, when determining whether a defendant should refrain from testifying.

Second, the post-conviction court found, given the record, Johnson could not show prejudice. ECF No. 11-16, pp. 217-20. This court agrees. Twice, the trial court advised Johnson of his right to testify and that the decision was his alone. Prior to trial, the court inquired and advised:

The Court: ...Defense how many witnesses did you anticipate?

Mr. Hamlin: ...no witnesses, other than the defendant himself, Your Honor.

The Court: [Al]right.

Mr. Hamlin: Of course, that will be a decision that we'll make at the time.

The Court: At some point with the defendant – he's here in court ... Sir, I'll have a discussion with you. You have the opportunity to testify if you wish. That's a decision that you make and you make alone, of course in consultation with your attorney. There will be some jury instructions I will read to the jurors at the end of the case. Depending on whether you take the stand as a witness or not will depend on which instructions I will read, okay. I'll go over that with you at some point; do you understand that sir?

Defendant: Yes, sir.

Tr. 97. After the State rested and after the court denied Johnson's motion for judgment of acquittal, the judge, again, advised Johnson:

The Court: Mr. Johnson, you have the ability to testify if you wish. I want to read two instructions to you. They will be given to the jury . . . based upon whether you take the stand or not; okay?

Defendant: Yes, sir.

The Court: If you become a witness in this case ... Instruction 3.9 ... Let me read it ... The defendant in this case has become a witness. You should apply the same rules to consideration of his testimony that you apply to the testimony of other witnesses. So, if you testify, I'm going to tell them that they need to treat

you like they would treat any other witness...Do you understand that?

Defendant: Yes, sir.

The Court: If you do not testify, I will give Jury Instruction 3.9... subparen D ... Defendant not testifying. The Constitution requires the State to prove its accusations against the defendant. It is not necessary for the defendant to disprove anything, nor is the defendant required to prove his innocence. It is up to the State to prove the defendant's guilty by evidence. The defendant exercised a fundamental right by choosing not to be a witness in this case. You must not view this as an admission of guilt or be influenced in any way by his decision. No juror should ever be concerned that a defendant did or did not take the witness stand to give testimony in the case. So, depending upon what you decide to do, I will give one of those instructions; okay?

Defendant: Yes, sir.

The Court: Mr. Hamlin, do you want some more time to speak to your client as to what he's going to do?

Mr. Hamlin: It will just take a second, Your Honor.

The Court: [Al]right.

Mr. Hamlin: He's not going to testify, Your Honor.

The Court: Let me just make sure that I confirm it. Mr. Johnson, this is the one area I say that you have an opportunity to make sure your will is known and your desires are known. Your attorney has just told me that you're not going to take the stand; is that correct?

Defendant: That's correct, sir.

The Court: Is that based on your decision?

Defendant: That is based on my decision.

The Court: Thank you, sir. [Al]right. Let's go over the jury instructions . . .

Tr. 489-91.

Johnson provides no evidence, nor does he suggest, he was coerced into not testifying. ECF No. 1, pp. 17-24. Rather, the trial court advised Johnson of his right to testify and gave him the opportunity to confer with counsel. Johnson confirmed it was his decision. It is not insignificant that Johnson waived his right to testify following the presentation of evidence of his jailhouse admissions to Stephen Ard and Johnson's recorded interview with law enforcement. Johnson made the decision *after* the State presented all of its evidence. Because Johnson cannot meet Strickland's deficiency prong, the court does not need to address whether there was prejudice. Dingle, 480 F.3d at 1100.

The post-conviction court denied Johnson's claim; and the First DCA affirmed. The decisions of the state and appellate courts were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations based on the evidence presented. The court must afford the factual determinations made by the state courts

the presumption of correctness unless they are clearly erroneous. Harris v. Dugger, 874 F.2d at 762. Accordingly, this claim should be **DENIED**.

C. Ground 3 - Counsel was not ineffective for failing to request the pre-2005 jury instruction on justifiable use of deadly force.

Johnson claims counsel failed to request the pre-2005 standard jury instruction on justifiable use of deadly force. ECF No. 1, pp. 24-34. According to Johnson, the judge instructed the jury:

> If the defendant was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, including deadly force, if he reasonably believed it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

Id., p. 25 (citing Tr. 326-27).

Johnson maintains the prosecutor argued the underlying "unlawful activity" was manufacturing cocaine; so, there was no justification to stand his ground. Id. Under Dorsey v. State, 74 So. 3d 521, 526 (Fla. 4th DCA 2011), Johnson claims he was entitled to the instruction even if he was involved in unlawful activity at the time of the incident. Johnson argues, if the instruction was given, the jury would have acquitted him. Id., p. 27.

The State correctly asserts this claim was adjudicated on the merits; and the state court rulings were reasonable and not contrary to federal law. ECF No. 11, p. 36. The post-conviction court found Johnson suffered no

prejudice. Id., p. 37. In addition, the failure to give the instruction was harmless error because the jury found Johnson guilty of *felony murder*, necessarily finding him guilty of robbing McCastle. Id., pp. 38-39. Self-defense was not available if Johnson robbed McCastle. Id., p. 39.

The felony murder conviction precludes any argument that a reasonable jury would find Johnson was justified in using deadly force, even if the instruction was given. First, Johnson incorrectly states the prosecutor's closing argument that the "unlawful activity" was the manufacturing of cocaine.[4] In closing, the prosecutor clearly distinguished the elements between first-degree- and third-degree felony murder:

> If you find [Johnson] guilty of first degree felony murder, that's that you believe he was trying to rob Tyler McCastle and that while in the course of robbing him, he killed him.
>
> Third degree felony murder would be you believe that they were in the process or engaged in the commission of manufacturing cocaine and that during that manufacturing of cocaine, they got into an argument and he killed Tyler McCastle.

Tr. 543.

---

[4] The prosecutor's arguments about cocaine manufacturing were tied to the robbery:

> We have cocaine in the house. We have cocaine in the defendant's hotel room. We have marijuana in the defendant's hotel room. He admits that he got [the drugs] from Tyler McCastle . . . [Johnson] admitted he was planning on robbing [MCCastle and] was waiting for him to cook the crack.

Tr. 535-36.

Second, there was ample evidence of a robbery. McCastle made dying declarations. On the 911 call, McCastle pleaded for help claiming he was stabbed and robbed. Tr. 232-33. Residents nearby testified McCastle broke through their gate and "bang[ed] on the door" for ten minutes "screaming and hollering" he was stabbed and "had gotten robbed." Tr. 151. Also, Johnson admitted to his cellmate that he intended to rob McCastle after cooking crack cocaine. Tr. 468-71. Further, the trial court properly instructed the jury on first-degree felony murder and made clear that the state was required to prove three elements: (1) McCastle is dead, (2) "while engaged in the commission of a [r]obbery . . . Johnson caused" McCastle's death," and (3) Johnson actually killed McCastle.[5] Tr. 585.

Third, the exception justifying the use of deadly force as an initial aggressor does not apply to Johnson. The pre-2005 jury instruction provides, in part, that deadly force is justified:

> . . . If the defendant was placed in a position of imminent danger or death or great bodily harm ***and it would have increased his own danger to retreat*** then his use of force likely to cause death or great bodily harm was justifiable.

ECF No. 1, p. 26, 29 (citing Dorsey, 74 So. 3d at 527) (emphasis added)).

[5] The court also instructed the jury on the lesser-included offenses: murder in the second degree, and murder in the third degree or manslaughter. Tr. 584. For murder in the third degree, the state would have to show that while Johnson was manufacturing cocaine, he caused McCastle's death. Tr. 589.

Page 21 of 49

Johnson does not point to any evidence upon which the jury could have found he "would have increased his own danger" if he retreated; and review of the transcript confirms there is none. When counsel discussed the jury instructions with the court, they agreed Johnson could not be "presumed to have a reasonable fear of imminent death or great bodily harm"; there was no evidence "the victim unlawfully and forcibly entered the dwelling or residence or tr[ied] to remove or attempt[ed] to remove another person against their will." Tr. 507-13. There is no reasonable probability the instruction would have led to an acquittal.

Counsel was not ineffective because there is no prejudice. The state courts' decisions were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations. Double deference is due. This claim should be **DENIED**.

D. Ground 4 - Counsel was not ineffective for not objecting to improper jury instructions.

Johnson claims counsel's failure to object to improper jury instructions denied him the right to effective counsel as follows:

*1. The Missing "or" in the § 776.041(2)(a)-(b) Instruction.*

Johnson claims that the jury instruction pursuant to Fla. Stat. § 776.041(2)(a)-(b) provides two exceptions which justify the use of deadly force even if he was the aggressor. Specifically, Johnson argues that the

word "or" between subsections (a) and (b) was not included when the instruction was read to the jury; and this error deprived him of two alternatives. In relevant part, Fla. Stat. § 776.041(2)(a)-(b) provides:

> Use or threatened use of force by [an] aggressor . . . is not available to a person who:
>
> . . .
>
> (2) Initially provokes the use or threatened use of force against himself or herself, unless:
>
> (a) Such force or threat of force is so great that the person reasonably believes that he or she is in imminent danger of death or great bodily harm and that he or she has exhausted every reasonable means to escape such danger other than the use or threatened use of force which is likely to cause death or great bodily harm to the assailant; ***or***
>
> (b) In good faith, the person withdraws from physical contact with the assailant and indicates clearly to the assailant that he or she desires to withdraw and terminate the use or threatened use of force, but the assailant continues or resumes the use or threatened use of force.

(emphasis added). However, at trial, the court instructed the jury:

> . . . the use of deadly force is not justifiable if you find:
>
> . . .
>
> (2) Caleb Nathaniel Johnson initially provoked the use or threatened use of force against himself, unless:
>
> (a) The force asserted toward the defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and that had exhausted every reasonable means to escape the danger other than using deadly force on Tyler McCastle.

> (b) In good faith, the defendant withdrew from physical contact with Tyler McCastle and clearly indicated to Tyler McCastle that he wanted to withdraw and stop the use of deadly force, but Tyler McCastle continued or resumed the use of force . . .

The word "or" was not included between subsection (a) and (b); but that alone will not earn Johnson federal habeas relief because it would give him a windfall to which he is not entitled. Johnson can only prevail if he proves his counsel's non-performance was both deficient and prejudicial. See Lynch v. Fla. Dep't of Corr., 776 F.3d 1209, 1220 (11th Cir. 2015) (citing Green v. Nelson, 595 F.3d 1245, 1251 (11th Cir. 2010)).

There was no evidence that Johnson believed he was in imminent danger and exhausted every reasonable means of escape as available under 2(a); and Johnson does not point to any. ECF No. 1, pp. 34-42; ECF No. 19, pp. 9-14. That leaves the 2(b) exception. In denying Johnson's Rule 3.850 motion, the post-conviction court determined there was no evidence Johnson withdrew from the knife fight (Johnson did not point to any in the record), which is required under the statute. ECF No. 11-16, p. 207. The same is true with the federal habeas petition. Not only does Johnson fail to point to any evidence that would qualify under 2(b), his concession "there is no evidence that Petitioner Johnson withdrew" automatically deprives him of the 2(b) exception. Id., pp. 36, 41. There is no

prejudice for counsel's failure to object to the missing "or" when Johnson did not qualify for either of the two exceptions. The post-conviction court determined this claim was insufficiently pled because Johnson failed to allege facts showing a reasonable probability that the jury would find that he met the 2(b) exception if so presented. That is true here. Johnson has no evidence that he withdrew from the fight or exhausted every means of escape; so, he could not rely on the statute. The claim should be **DENIED**.

*2. The Extra Comma in the § 776.013(3) Instruction.*

Johnson asserts counsel failed to object to the extra comma included after "including deadly force," which he maintains changed the meaning of the instruction for non-deadly force. ECF No. 42. Johnson relies on Talley v. State, 106 So. 3d 1015 (Fla. 2d DCA 2013) and Sims v. State, 140 So. 3d 1000 (Fla. 1st DCA 2014) in which the following instruction was given:

> . . . if [the defendant] was not engaged in an unlawful activity and was attacked in any place where he had a right to be, he had no duty to retreat and had the right to stand his ground and meet force with force, **including deadly force,** if he reasonably believed that it was necessary to do so to prevent death or great bodily harm to himself or to prevent the commission of a forcible felony.

See Sims, 140 So. 3d at 1003 (emphasis added). The extra comma was included after the phrase ". . . including deadly force." Id. The same error occurred in Johnson's trial. Tr. 600. In Talley and Sims, the extra comma

suggested the defendant had no right to defend himself with any force unless the victim threatened him with deadly force. Sims, 140 So. 3d at 1005; Talley, 106 So. 3d at 1017. However, Section 776.013(3) only applies when a person is "***not engaged*** in an unlawful activity." Sims, 140 So. 3d at 1005 (emphasis added). By its verdict, the jury found Johnson was, indeed, engaged in unlawful activity -- he robbed McCastle. The evidence showed Johnson and McCastle were manufacturing cocaine at the time the knife fight ensued; and Johnson took the drugs from McCastle and fled the state.

There is no reasonable probability the jury would have acquitted Johnson. There is no prejudice. The state and appellate courts decisions were reasonable and not contrary to clearly established federal law. Double deference is due. This claim should be **DENIED**.

*3. The Trial Court Referred to McCastle as the "Victim."*

Johnson argues counsel failed to object when the trial court referred to McCastle as the "victim" during the self-defense instructions. ECF No. 1, p. 42. Johnson claims the term "victim" implied Johnson was guilty and was the initial aggressor. Id., pp. 42-43. This, Johnson maintains, deprived him of the defense of self-defense. Id., p. 43. Had counsel objected, there is a reasonable probability the jury would have acquitted Johnson or found him

guilty of a lesser offense. Id. Johnson provides no legal authority to support this claim. Id., pp. 42-45.

The trial court's use of the word "victim" to describe McCastle, standing alone, is insufficient to support grounds for relief, particularly, in light of the jury instructions as a whole. Throughout the instructions, the court referred to McCastle by name. Tr. 583-608. The court instructed the jury Johnson would be justified in using deadly force if "the victim took the money or property from the person or custody of the defendant." Tr. 596, 598. But the court also referred to Johnson as a "victim" who could be justified in using deadly force if he was under a threat that "creates in the mind of the victim a well-founded fear that violence is about to take place." Tr. 597. The court instructed the jury they could find Johnson's use of force was justified if "the victim committed aggravated battery if he intentionally caused bodily harm to the Defendant" and "used a deadly weapon." Tr. 599. Having reviewed the record, this court cannot conclude that the court's use of the term "victim" to describe McCastle denied Johnson a fair trial. The use of the term "victim" was appropriate and not confusing.

Given the overwhelming evidence against Johnson, the error(s) in the jury instruction(s) did not prejudice him. Johnson robbed McCastle and killed him; therefore, he could not benefit from a self-defense defense. The

state courts' decisions were reasonable and not contrary to federal law. Double deference is due. This claim should be **DENIED**.

E. Ground 5 - Counsel was not ineffective for failing to argue *corpus delicti.*

Johnson claims counsel was ineffective for failing to argue *corpus delicti*, a doctrine which requires "that each element of the relevant offense must be shown to exist." ECF No. 1, pp. 45-48. Johnson claims the only evidence supporting robbery as a predicate offense for first-degree felony murder was his alleged jailhouse confession and McCastle's dying declaration. Id. Johnson relies on Franqui v. State, 699 So. 2d 1312, 1317 (Fla. 1977) and State v. Allen, 335 So. 2d 823, 825 (Fla. 1996). Id.

The State argues *corpus delicti* does not require proof of an underlying felony; therefore, counsel was not ineffective for failing to raise a meritless claim. ECF No. 11, pp. 52-53. The State relies on Foster v. State, 886 So. 2d 1037, 1038 (Fla. 4th DCA 2004) and McArthur v. State, 793 So. 2d 1190, 1194 (Fla. 5th DCA 2001). Id. The State maintains the state court decisions were reasonable and not contrary to federal law. Id., pp. 50-51.

Although an ineffective assistance of counsel claim is a federal constitutional claim, Johnson actually presents a state law claim -- counsel failed to challenge the application of the state's evidentiary rules on the admissibility of his confession. In Florida, the *corpus delicti* doctrine

requires that "before a confession is admitted[,] the state has the burden of proving by substantial evidence that a crime was committed, and . . . such proof may be in the form of circumstantial evidence." Allen, 335 So. 2d at 824. By the late 1990s, many jurisdictions abandoned this rule. See Ravelo v. Dixon, 2023 U.S. Dist. LEXIS 61401, at *27-28 (S.D. Fla. Apr. 6, 2023). Federal courts have consistently held that *corpus delicti* is a creature of state law and is not cognizable under § 2254. Id.; West v. Johnson, 92 F.3d 1385, 1393-94 (5th Cir. 1996) (habeas relief denied because petitioner did not cite any authority showing *corpus delicti* is constitutionally required); Evans v. Luebbers, 371 F.3d 438, 442 (8th Cir. 2004) (a *corpus delicti* claim does not implicate federal constitutional rights); Jacobs v. Horn, 395 F.3d 92, 111 (3d Cir. 2005) (*corpus delicti* is a state law requirement); Gerlaugh v. Lewis, 898 F. Supp. 1388, 1410 (D. Ariz. 1995) (rejecting *corpus delicti* claim because it is a matter of state law). Section § 2254(a) provides that federal courts may only review claims that a person "is currently in custody *in violation of the Constitution or laws or treaties of the United States*." (emphasis added). See Carrizales v. Wainwright, 699 F.2d 1053, 1054-55 (11th Cir. 1983) ("A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved."). Federal courts will not "reexamine

state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

Federal courts follow the "trustworthiness doctrine" to determine whether a defendant's confession may be used to support a conviction. See Opper v. United States, 348 U.S. 84 (1954); Smith v. United States, 348 U.S. 147, 152 (1954). Under the doctrine, a defendant cannot "be convicted solely on the basis of an uncorroborated confession"; the government must "present substantial evidence to show that the confession, taken as a whole is reliable and trustworthy." United States v. Hill, 518 F. App'x 744, 745-46 (11th Cir. 2013) (citing Opper, 348 U.S. at 89). However, Johnson did not present this claim.

For Johnson to succeed, this court must find that the post-conviction court unreasonably applied Strickland based on a misinterpretation of state law. This is impermissible. The post-conviction court denied Johnson's claim because it is unnecessary to establish *corpus delicti* of the burglary before admitting his confession into evidence under Foster, 886 So. 2d at 1038. Counsel is not ineffective for failing to raise a meritless argument. See Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001). This claim should be **DENIED**.

F. Ground 6 - Counsel was not ineffective for failing to object to the prosecutor's closing arguments.

According to Johnson, counsel was ineffective because he did not object to two statements by the prosecutor during closing arguments. ECF No. 1, pp. 48-51. First, the prosecutor told jurors to find Johnson acted in self-defense, they must believe Johnson. Id., p. 49. Johnson maintains this improperly shifted the burden because the state has the burden to prove he did not act in self-defense; he relies on Mosansky v. State, 33 So. 3d 756, 758 (Fla. 1st DCA 2010) and Paul v. State, 980 So. 2d 1282 (Fla. 4th DCA 2008). Next, Johnson claims the prosecutor misstated the law by arguing, "[i]t's not self -defense and he's not justified if he provoked that use of force." Id., p. 49. Johnson again points to the two exceptions available under Fla. Stat. § 776.041. Id., p. 50. Johnson believes the comments combined with the erroneous jury instruction deprived him of a fair trial. Id.

The state may not make comments that mislead the jury as to the burden of proof. See Jackson v. State, 575 So. 2d 181 (Fla. 1991). In Johnson's case, the prosecutor did not create confusion. During closing arguments, the prosecutor played a segment of Johnson's recorded statements to law enforcement and then stated to the jury:

> When confronted about drugs, that's how the defendant responded. Look at his mannerisms. Look at how he responds. Look at his facial expressions. There were

> drugs all over the place. Shocked and [a]ghast. It's important to note that because in order to rule and find that he was acting in self-defense, you need to believe what he was telling the police officers. You have to believe his version of it.

Tr. 546-47. The statement was not improper; credibility determinations are for the jury. See Haygood v. Auto-Owners Ins. Co., 995 F.2d 1512 (11th Cir. 1993) (citations omitted). In opening statements and closing arguments, Johnson's counsel told the jury it was the state's burden to prove the charges, the defense did not have to prove anything, and Johnson acted in self-defense. Tr. 141-48, 552-57, 562, 565-66. Counsel addressed the same video and emphasized Johnson's assertions that he defended himself from McCastle's attack. Tr. 552-53.

At trial, the prosecutor presented the testimony of several witnesses, McCastle's 911 call, Johnson's recorded police interview, and Johnson's jailhouse admission. The evidence was overwhelming. Johnson's reliance on Paul is unconvincing. Unlike Johnson's trial, only one witness testified at Paul's trial. The prosecutor told the jury, to be acquitted, Paul had to prove the sole testifying witness was lying, which wrongfully shifted the burden. Paul, 980 So. 2d at 1283. The court's instruction did not erase the confusion. Id. But at Johnson's trial, there were several witnesses.

Mosansky does not further the claim. A defendant has the burden of

presenting sufficient evidence he acted in self-defense. Mosansky, 33 So. 3d at 757. "[S]elf-defense is not an element of first-degree murder . . . rather, it is an affirmative defense that has the effect of legally excusing the defendant from an act that would otherwise be a criminal offense." Id. at 758. Mosansky argued the trial court failed to instruct the jury "the state had the burden to disprove his claim of self-defense." Id. at 757. But the court rejected that argument; no jury instruction was required. Id. at 758.

In Johnson's case, the trial court provided the jury with the self-defense instruction. Tr. 595-608. At the beginning of trial, the court instructed the jury that the burden of proof was on the state, Johnson "[was] not required to present any evidence or prove anything," and the jury "may believe or disbelieve" any witness. Tr. 133-37.

Even assuming the prosecutor's comments were improper, the error was harmless. Johnson's conduct after the murder did not support claims that he killed McCastle in self defense. See Morales v. State, 251 So. 3d 167, 172 (Fla. 4th DCA 2018). Johnson did not call the authorities for assistance; he left his apartment, drove to Alabama, and stayed in a hotel room for two days with the drugs he stole from McCastle. A jury could infer from the evidence a lack of credibility and claims of self-defense.

Page 33 of 49

Johnson's claim regarding the prosecutor's second statement is easily resolved. The prosecutor stated:

> It's not self-defense and he's not justified if he provoked that use of force . . . It's not about winning or losing, it's about who is the aggressor and who started it. And the evidence points to the defendant time and time again about who started it, who's the aggressor . . .

ECF No. 1, p. 49-50 (quoting Tr. 549). As explained in Section V(D)(1) above, Johnson could not avail himself of § 776.041 because he did not meet either exception. No evidence showed Johnson believed he was in imminent danger, exhausted every reasonable means of escape, or withdrew from the knife fight; and Johnson concedes this. ECF No. 1, p. 41.

Johnson cannot satisfy either prong in Strickland. A prosecutor's "arguments will not compel habeas relief" unless the trial was "fundamentally unfair." Cargill v. Turpin, 120 F.3d 1366, 1379 (11th Cir. 1997). Even if the prosecutor never made the remarks (or if trial counsel objected), the evidence was so overwhelming that the outcome would be no different. Id. The prosecutor did not shift the burden of proof; no objection was therefore necessary. The state courts' decisions were reasonable and not contrary to federal law. The claim should be **DENIED**.

G. Ground 7 – Counsel's comments during closing arguments were not improper.

Johnson argues his trial counsel made improper comments during

closing argument when he said, "we may never know what happened in the house." ECF No. 1, p. 52. Johnson believes this impacted the jury's opinion on his right to remain silent. Id. But for counsel's error, the jury would have acquitted Johnson or found him guilty of a lesser offense. Id., pp. 51-53.

The State asserts the trial court properly instructed the jury about Johnson's right to remain silent, the State's burden of proof, and how Johnson was not required to present evidence or prove anything. ECF No. 11, p. 67. The State argues the claim was resolved on the merits; and the decision was not unreasonable or contrary to federal law. Id., pp. 64-69.

Johnson focused on his trial counsel's two comments: "You know, we may never know what happened in that house . . ." and "What's important in this case is what happened in those few minutes before the fight started. We may never know." ECF No. 1, p. 52. However, those comments must be considered within the proper context. At closing, his trial counsel stated:

> . . . in the jury instructions that the judge will read you on self-defense: If in your consideration of the issue of self-defense, you have a reasonable doubt on the question of whether the defendant was justified in the use of deadly force, you shall find the defendant not guilty. You know, we may never know what happened in that house. But it's the State's job to prove to you the elements of the charges. They can't do it.

Tr. 562. Repeatedly during closing, his trial counsel argued Johnson acted in self defense. Tr. 552-53, 556-57, 562, 564-66. The comments did not

Page 35 of 49

affect Johnson's right to remain silent. Rather, it emphasized if the jury could not determine who initiated the altercation or if Johnson was justified in using deadly force, that was the reasonable doubt that required a not-guilty verdict. Trial counsel explained:

> What's really important in this case is not all the pictures or the going 30 miles away to a hotel in an area that he's familiar with, not calling 9-1-1, blood all over the place, DNA here, thumb prints there. What's important in this case is what happened in those few minutes before the fight started. We may never know. If you don't know, if you can't be sure that [Johnson] started it, then you can't convict him. We know [Johnson] was stabbed. He's got defensive wounds . . .

Tr. 564.

Johnson waived his right to remain silent when he gave statements to police; that interview was played for the jury. Tr. 307-409, 413-38. Counsel's comments were consistent with the evidence presented at trial. Johnson cannot satisfy either prong of Strickland. Double deference is due. The state courts' decisions were not unreasonable and not contrary to federal law. This claim should be **DENIED**.

H. Ground 8 – Counsel was not ineffective for failing to object to Dr. Minyard's use of the term "victim."

Johnson claims Dr. Minyard's testimony about McCastle's finger injuries suggested McCastle was the victim rather than Johnson. ECF No. 1, pp. 53-56. Johnson claims Dr. Minyard's use of the term "victim" was

improper and offers Geissler v. State, 90 So. 3d 941 (Fla. 2d DCA 2012) for support. Johnson claims the testimony was improper bolstering. Id. A proper objection would have required Dr. Minyard to clarify she could not determine who the aggressor was, a curative instruction would have been provided to the jury, or the court could declare a mistrial. Id., pp. 54-55.

The State asserts the claim was resolved on the merits and was not unreasonable or contrary to federal law. ECF No. 11, pp. 69- 72. The State maintains Dr. Minyard acknowledged she did not know who the aggressor was or how the wounds were inflicted. Id., p. 71.

Johnson singles out Dr. Minyard's statement that McCastle's wounds were "consistent if a victim were trying to grab the blade of a knife and suffers injuries to the fingers." ECF No. 1, p. 54 (citing Tr. 214). But Dr. Minyard's use of the term "victim," without more, is insufficient to rise to the level of improper bolstering. Dr. Minyard did not speculate about any intention or motive from either Johnson or McCastle. Geissler, 90 So. 3d at 947. As stated above in Section IV(A), Dr. Minyard testified McCastle suffered "multiple stab wounds" and "superficial injuries," including to his hand and fingers consistent with "trying to grab the blade of a knife." Tr. 205, 214. Still, Dr. Minyard testified she could not determine who was the aggressor, what happened in the struggle, or whether McCastle's finger

wounds were defensive wounds. Tr. 216-17. There is no law that prohibits a witness from using the term "victim." Counsel is not ineffective for failing to object. There was no prejudice. The state courts' decisions were not unreasonable nor was it contrary to federal law. This claim should be **DENIED**.

I. Ground 9 - Counsel was not ineffective for failing to ensure the jury saw Johnson's recorded reaction to news of McCastle's death.

Johnson claims that during his interview with police, he broke down and cried when the officer told him McCastle died; he argues it should have been played for the jury. ECF No. 1, pp. 56-57. Johnson maintains counsel failed to argue "the rule of completeness" and failed to request a presentation of the recording at trial. Id., pp. 56-58. But for this error, the result of the proceeding would have been different. Id. The state argues the claim is refuted by the record; and the state courts' decision on the merits was reasonable and not contrary to federal law. ECF No. 11, pp. 72-78.

Detective Greene testified that his entire interview with Johnson was recorded, some by video, and the second half in audio format. Tr. 302-03. The video recorder failed to capture the entire interview, but Greene's pocket recorder did. Id. Johnson's initial reaction to the news of McCastle's death was captured on video and was published to the jury. Tr. 395-96. The transcript does not describe any emotional response to the news from

Johnson. Id. However, the audio response recorded Johnson sobbing and Greene telling Johnson, “Son, son, I don’t judge you. I don’t think bad of you, ok. Let it out, son. Let it out . . . Let it out son. It’s ok. It’s all right.” Tr. 432. Johnson responded:

> And I am an emotional person, but I’m not calling myself out . . . I swear I didn’t – I mean, I did not come after him fighting. I mean, he came after me and I just did what I had to do to make sure I was alive. It’s not my fault. He wanted come at me all crazy with knives and stuff, and I mean . . . I was just protecting myself. I know I haven’t been saying everything the truth in the beginning, but it’s only because I’m scared.

Tr. 432-33. There are approximately thirty-two pages of transcript between the first time Greene told Johnson McCastle died and the time Johnson began sobbing. The jury had it all for consideration – Johnson’s initial reaction, his repeated statements that he fought in self-defense, and all the other matters he and Greene discussed in between. Tr. 395-409, 413-33.

Counsel is not ineffective for failing to raise meritless arguments. Johnson’s reaction to McCastle’s death was played for the jury. The post-conviction court determined there was no prejudice because the jury could see his reaction. The state courts’ decisions were not unreasonable or contrary to federal law. This claim should be **DENIED**.

Page 39 of 49

J. Ground 10 - Counsel was not deficient for publishing photographs of Johnson's injuries directly to the jury.

Johnson claims the way his trial counsel published the photos of Johnson's injuries to the jury was improper. ECF No. 1, pp. 58-60. In Johnson's opinion, because the prosecutor used a projector to publish photos of McCastle's injuries, defense counsel should have done the same with the photos of Johnson's injuries. Id., p. 59. Johnson maintains that the different presentations created an impression on the jury that McCastle's injuries were more severe. Id.

The State contends that the different presentations were not erroneous even if the jury believed McCastle's injuries were more severe. ECF No. 11, p. 80. The State also argues Johnson does not provide a compelling reason that suggests counsel's decision rises to the level of ineffective assistance; so, the claim is speculative. Id. Johnson's claim fails.

It is well-established in a criminal trial, defense counsel has "wide latitude . . . in making tactical decisions" about how to present evidence and attack the prosecution's evidence. Harrington, 562 U.S. at 106. Strategic decisions are "virtually unassailable, especially when they are made by experienced criminal defense attorneys." Williams v. Head, 185 F.3d 1223, 1242 (11th Cir. 1999). Strategic decisions will amount to ineffective assistance "only if so patently unreasonable that no competent

attorney would have chosen it." Kelly v. United States, 820 F.2d 1173, 1176 (11th Cir. 1987) (quoting Adams v. Wainwright, 709 F.2d 1443, 1445 (11th Cir. 1983)).

As explained above in Section IV(A), Dr. Miynard testified about the severity of McCastle's wounds, including one to "the upper back . . . about four and a half inches deep . . . through his ribcage . . . [that] hit his right lung." Tr. 208. The prosecutor displayed these photos using a projector. Tr. 206. During the cross-examination of Detective Greene, Johnson's trial counsel published Johnson's photos by passing them directly to the jury. Tr. 290.

The jury saw Johnson's police interview where he described the knife fight and the injuries. Tr. 307-409. Johnson said McCastle came at him with a knife and cut Johnson on his arm and back; and Johnson grabbed the knife causing deep cuts to his own hand. Tr. 310, 333-34, 390. Johnson complained, "It's bad. It's been hurting" and it could be "infected." Tr. 319. Then, Johnson described how he stabbed McCastle:

> I grabbed the knife . . . pushing the knife into [McCastle], like pushing it into him. I remember stabbing him . . . At the time he was like on his stomach, and basically, I was pushing him down with the knife, and I remember stabbing him. I think I stabbed him in his back. I'm not sure exactly.

Id.; see also Tr. 389. Johnson wrapped his hand, left the house, threw his

bloody t-shirt in a trash can at a gas station, and checked into a hotel room. Tr. 339-50. Johnson never sought medical attention; he went to Wal-Mart and bought a T-shirt, gauze, and disinfectant. Tr. 353, 393, 400-02.

Notwithstanding the differences in the presentation of the photos, a reasonable jury could find McCastle's injuries were more severe simply because they were, in fact, fatal. Johnson's version of events confirms McCastle suffered the more severe injury. He wrestled McCastle to the floor, onto his stomach, and pushed the knife deep into McCastle's back. The evidence was overwhelming. The post-conviction court adjudicated this claim on the merits and determined Dr. Minyard's testimony, Johnson's description of the fight, and Johnson's failure to seek medical attention contradicted his claim. ECF No. 11-16, p. 221. It was reasonable for the jury to find McCastle's wounds were more severe, regardless of the photo display. Id.

The decision was affirmed on appeal. Counsel's trial strategy was reasonable and deserves double deference. The state courts' decisions were not contrary to nor involved an unreasonable application of clearly established federal law and were reasonable determinations in light of the evidence presented. Accordingly, this claim should be **DENIED**.

K. Ground 11 - Counsel was not ineffective for failing to present witnesses Jana Brewer and Michelle Andrews at the hearing on the motion for new trial.

Johnson claims his trial counsel should have presented Jana Brewer and Michelle Andrews at the hearing on his motion for a new trial. ECF No. 1, pp. 60-63. In the motion for new trial, counsel argued McCastle previously robbed Brewer and Andrews; and one saw McCastle commit another armed robbery at knifepoint. Id., p. 61. The witnesses would have provided admissible testimony of McCastle's violent character traits; and the court would have granted Johnson's motion. Id. Johnson's claim fails.

The State argues the testimony of the witnesses would not have been admissible at trial under Antoine v. State, 138 So. 3d 1064, 1075-76 (Fla. 4th DCA 2014). ECF No. 11, pp. 82-83. Furthermore, the court denied the motion for reasons unrelated to the witnesses; therefore, their testimony was unnecessary and would not have affected the ruling. Id., pp. 83-84. Because the testimony would not have affected the outcome of the motion for new trial, counsel was not ineffective. Id.

In the motion, trial counsel argued that, on the day Johnson was convicted, two women came forward with information that McCastle used a weapon to take money from them; and another witnessed McCastle demanding money from another person at knifepoint. ECF No. 21-1,

pp. 3-4. At the hearing, counsel argued the witnesses' testimony would be admissible to show that McCastle was possibly the aggressor; and they could not "have known about this information" earlier. Id., pp. 4-5. Counsel maintained the defense rested on determining who the aggressor was. Id., p. 6. The prosecutor responded this was an attempt to introduce specific acts as reputation evidence – that is "the victim acted in conformity" with the acts alleged. Id., p. 7. The acts would be admissible only if Johnson could show he knew about those acts at the time of the murder. Id., p. 8. The prosecutor relied on Munoz v. State, 45 So. 3d 954 (Fla. 3d DCA 2010) and Antone v. State, 138 So. 3d 1064 (Fla. 4th DCA 2014).

Johnson's counsel insisted the testimony was admissible under Munoz and Dwyer v. State, 743 So. 2d 46 (Fla. 5th DCA 1999) because evidence is "not prohibited by [a] defendant's lack of prior knowledge of the character trait of the victim" and he may show through the testimony of others that the victim had a propensity for violence. Id. Finally, counsel argued Cole v. State, 193 So. 2d 47 (Fla. 1st DCA, 1966): "[t]he accused is entitled to have a jury see all the circumstances as they existed and to judge them accordingly," which "they could not do if . . . the dangerous character of the deceased was kept from them." Id., p. 49.

Generally, evidence regarding a victim's character is inadmissible to prove action in conformity with it, to prove bad character, or propensity. See Fla. Stat. § 90.404(1). But admissibility does not end the inquiry. To succeed, Johnson had to show the testimony, if admitted, would "probably result in a different outcome." ECF No. 21-1 p. 12. The court explained:

> The ... issue is whether the information here, if I allowed it in, I'm not sure if I would, but if I did, would there probably be a different outcome. The problem ... in evaluating the evidence in total, is your client didn't call the police and say, hey, somebody tried to rob me; there was a fight; come over here. He gets in the car; he runs away or flees ... he goes to a motel ... he procures other drugs ... alcohol ... denies it and then admits to it ... [crack addiction is] embarrassing to his parents who raised him better than that. He drives by their house. Doesn't go into his dad's house. And looking at [it] in total like that ... even if this information came in, and I'm not judging that it would, I don't think it would probably change the outcome. So[,] I'm going to deny the motion ...

Id., pp. 12-13.

The post-conviction court decided this claim on the merits and found the record refuted Johnson's assertions. ECF No. 11-16, pp. 221-22. At the hearing, counsel informed the trial court the witnesses were present and available to testify, but the trial court did not permit their testimony. Id., p. 222. In denying the Rule 3.850 motion, the post-conviction court noted the testimony would not have been admissible. Id. The appellate court affirmed. The state courts' decisions were not unreasonable or contrary to

federal law in light of the evidence presented. The claim should be **DENIED**.

L. Ground 12 – Johnson's cumulative error claim fails.

Johnson argues he was denied a fair trial due to counsel's cumulative errors and cites to Ewing v. Williams, 596 F.2d 391, 396 (9th Cir. 1979) and Cargle v. Mullin, 317 F.3d 1196, 1206-07 (10th Cir. 2003), neither of which is binding authority. Johnson quoted Ewing: "[w]here no single error or omission of counsel, standing alone, significantly impairs the defense, the district court may nonetheless find unfairness and thus, prejudice emanating from the totality of counsel's errors and omissions." ECF No. 1, pp. 63-64 (citing 596 F.2d at 396).

The Eleventh Circuit has held "[t]he cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal." United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) (internal quotation marks omitted). However, the court first "consider[s] the validity of each claim individually, and then examining any errors that we find in the aggregate and in light of the trial as a whole to determine whether [Johnson] was afforded a fundamentally fair trial." Morris v. Sec'y Dep't of Corr., 677 F.3d

Page 46 of 49

1117, 1132 (11th Cir. 2012). As discussed above, none of Johnson's individual claims have any merit; thus, there is nothing to accumulate. Id.; see Insignares v. Sec'y, Fla. Dep't of Corr., 755 F.3d 1273, 1284 (11th Cir. 2014) ("This court has made clear that where '[t]here [is] no error in any of the [trial] court's rulings, the argument that cumulative trial error requires that this Court reverse [the defendant's] convictions is without merit."). This claim should be **DENIED**.

M. Ground 13 – Johnson is not entitled to an evidentiary hearing.

1. *Whether a post-conviction court improperly denied a petitioner an evidentiary hearing is not a cognizable claim under § 2254.*

Johnson claims the post-conviction court denied his Rule 3.850 motion without an evidentiary hearing, which was improper.[6] However, this fails to state grounds for which federal habeas relief can be granted. See Spradley v. Dugger, 825 F.2d 1566, 1568 (11th Cir. 1987). Such a claim, standing alone, is unrelated to the legality of Johnson's conviction and sentence. It is "'beyond debate' that a state court's failure to conduct an evidentiary hearing on a post-conviction motion does not constitute a cognizable claim for habeas relief." Carroll v. Sec'y, Dep't of Corr., 574 F.3d 1354, 1365 (11th Cir. 2009) (citing Anderson v. Sec'y for Dep't of Corr., 462 F.3d 1319, 1330 (11th Cir. 2006). This claim should be **DENIED**.

[6] See ECF No. 1, pp. 14-17, 20-21, 24, 34, 44, 48, 51, 53, 56, 58, 60, and 63.

*2. Johnson is not entitled to a federal evidentiary hearing.*

If Johnson seeks a federal evidentiary hearing on the claims he presents, the "court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). [I]f the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. Because the record shows Johnson is not entitled to relief, no evidentiary hearing is necessary. See Rule 8(a) R. Gov. § 2254 Cases in U.S. Dist. Cts. In all but extraordinary cases, AEDPA "bars evidentiary hearings in federal habeas proceedings initiated by state prisoners." McQuiggin v. Perkins, 569 U.S. 383, 395 (2013). A federal evidentiary hearing is permissible only if the state court did not decide the issue on the merits. See Cullen, 563 U.S. at 185. That is not the case here.

## V. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific

issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).” Rule 11(b) provides that a timely notice of appeal must still be filed, even if the Court issues a certificate of appealability. Johnson fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted). Therefore, the Court should deny a certificate of appealability.

The second sentence of Rule 11(a) provides: “Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue.” The parties shall make any argument as to whether a certificate should issue by filing objections to this Report and Recommendation. Leave to appeal *in forma pauperis* should also be denied. See Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal *in forma pauperis*).

## VI. Conclusion and Recommendation

For the reasons stated, it is respectfully **RECOMMENDED** that the Court **DENY** Plaintiff’s § 2254 petition (ECF No. 1). It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal *in forma pauperis* be **DENIED**.

**IN CHAMBERS** at Tallahassee, Florida, on November 6, 2023.

**s/ Martin A. Fitzpatrick**
**MARTIN A. FITZPATRICK**
**UNITED STATES MAGISTRATE JUDGE**

**NOTICE TO THE PARTIES**

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2). A copy of the objections shall be served upon all other parties. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. 72(b)(2). Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control. If a party fails to object to the Magistrate Judge's findings or recommendations as to any particular claim or issue contained in this Report and Recommendation, that party waives the right to challenge on appeal the District Court's order based on the unobjected-to factual and legal conclusions. See 11th Cir. Rule 3-1; 28 U.S.C. § 636(b)(1)(C).